**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Levon MANLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted March 18, 2009.

Filed Nov. 30, 2009.

---

Leanne L. Litwin, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: BENDER, SHOGAN, JJ. and McEWEN, P.J.E.

OPINION BY SHOGAN, J.:

¶ 1 Appellant, Levon Manley, appeals from the October 26, 2007 judgment of sentence entered in the Court of Common Pleas of Philadelphia County. Appellant was sentenced to concurrent terms of incarceration of eighteen to thirty-six years for attempted murder,[1] seven to twenty years for aggravated assault,[2] three and one-half to seven years for carrying firearms without a license,[3] and one and one-half to five years for possessing instruments of crime.[4] After careful review, we affirm.

¶ 2 The trial court summarized the factual and procedural history of this case as follows:[5]

On February 3, 2006 Complainant Taaqi Brown resided with his father and step-mother at 159 Wyneva Street, Philadelphia, PA and was returning home

---

1. 18 Pa.C.S.A. § 901(a).

2. 18 Pa.C.S.A. § 2702(a).

3. 18 Pa.C.S.A. § 6106(a)(1).

4. 18 Pa.C.S.A. § 907(a).

5. Although it is not mentioned in the trial court's summarization of the facts, the victim testified that, after the first bullet was fired and he began to run, he saw someone other than Appellant in the street as well. N.T., 7/27/07, at 54.

when he observed Appellant approach him with a gun. N.T.,[1] 7/27/2007, [at] 48–49, 52–54. Appellant fired one shot at Complainant which did not hit its mark and Complainant began to run. *Id.* [at] 54. Appellant fired several more shots at the fleeing Complainant, hitting him in the leg and thigh, left groin, shoulder, left hand, middle finger and thumb. *Id.* 54; *See also,* N.T. 7/30/2007 [at] 165–170. In all Complainant was shot five times. N.T. 7/27/2007 [at] 59. Complainant testified that he was able to get to his house and was transported to Temple Hospital where he was admitted to surgery and remained for a week. He suffers permanent disability as a result of the shooting. *Id.* [at] 60–61, N.T. 7/30/2007 [at] 165–170. Complainant also testified that he does not know Appellant well, but that he had previously seen him in his neighborhood. Appellant's nickname is Levi. *Id.* [at] 58.

---

[1] N.T. refers to the Notes of Testimony taken at the hearing on the Motion to Suppress Identification Evidence and the jury trial before the Honorable Gwendolyn N. Bright on July 24–August 2, 2007, and the Sentencing on October 26, 2007. The specific date to which reference is made follows "N.T.".

Philadelphia Police Officer Daniel Richardson arrived at Complainant's home shortly after the shooting where he observed that Complainant, who was in an emotional and panicked state, had multiple gunshot wounds. Complainant described his assailants as two black males; one six foot one to two inches with a Sunni beard who Complainant knew as Levi and who frequented the nearby corner of Wayne and Seymour, and the other male he described as dressed in black. N.T. 7/27/2007 [at] 101. Ultimately, Complainant positively identified Appellant from a photo array. *Id.* [at] 109.

At trial Shieed Brown testified that while he and Appellant were cellmates in federal custody on an unrelated matter, Appellant confessed to him that he shot a guy four times with a .45 caliber hand gun in retaliation for the killing of Appellant's friend Spinach, a rapper who resided in the neighborhood. N.T. 7/27/2007 [at] 121–123. Appellant further related to Brown that he knew Complainant was a friend of Spinach's killer and therefore when Appellant saw Complainant he shot him. *Id.* [at] 122–123.

Alibi evidence was offered through the testimony of Isa Williams that the day before Appellant's arrest, he and his cousin attended a tattoo party at the home of a person he identified as Kia, the mother of Spinach's child, which was a short distance from the location where Complainant was shot. [N.T.] 7/31/2007 [at] 45–50. Williams stated that he arrived at the party at approximately 8:30 PM and that he observed Appellant there at the time Williams arrived. Williams further testified that he left the party at approximately 10:00 PM and that Appellant left the party at the same time. *Id.* [at] 47, 50.

Trial Court Opinion, 4/17/08, at 3–4 (internal footnotes renumbered).

On February 4, 2006 Appellant was arrested and charged with Aggravated Assault, Attempted Murder, Violation of Section 6106 of the Uniform Firearms Act, Possessing Instruments of Crime, and related offenses, and on August 2, 2007 after a jury trial before this Court he was found guilty of those crimes. On October 26, 2007 Appellant was sentenced to a lengthy term of incarceration. Post Sentence Motions were filed and on November 15, 2007 they were

denied. This timely Appeal followed on December 5, 2007.

Trial Court Opinion, 4/17/08, at 1.

¶ 3 Appellant presents the following issues for our review:

1. Whether the verdict was against the evidence.[6]

2. Whether the verdict was against the weight of the evidence.

3. Whether the Court erred in failing to grant [Appellant's] Motion to Supress [sic] Identification evidence, where it was clear that the [Appellant's] image on the photo array was unduly suggestive so as to violate [Appellant's] constitutional rights.

4. Whether the Court erred [in] refusing to permit the [Appellant] to question the prospective jurors as to their bias/prejudice toward an eyewitness to a crime if they themselves had been an eyewitness to a crime.

5. Whether the Court erred in admitting hearsay which included the victim's statement contained in the 75–48 [Philadelphia Police Report] as an excited utterance where there was an indication that the utterance was a result of questioning as well as the use of the name "Levi".

6. Whether the Court erred in failing to grant a mistrial where evidence was adduced, that the Appellant sold and smoked marijuana and where the Commonwealth referred to the prior bad act in her closing statement.

7. Whether the Court erred in failing to grant a mistrial where evidence was adduced, despite a Court Order, that the [Appellant] was in federal custody.

8. Whether the Court erred in failing to take judicial notice of the Federal Sentencing Guidelines, which prohibited full and fair cross-examination of Shyheed [sic] Brown.

9. Whether the Court erred in failing to grant [Appellant's] Motion for Directed Verdict on the charge of Attempted Murder where the Commonwealth failed to make out the elements of attempted murder and where there was no evidence that the alleged weapon had been pointed at or toward a vital organ or other vital part of the victim's body.

10. Whether the Court erred in permitting the stenographer, during a jury question, to read directly from the 75–48 [Philadelphia Police Report] instead of reading back the testimony of the police officer.

Appellant's Brief at 3–5.

¶ 4 Before we reach the merits of the aforementioned claims, we must first consider whether any of them have been waived. Appellant's first two claims arguably challenge both the sufficiency and weight of the evidence. Initially, we must note that a challenge to the weight of the evidence *concedes* that the evidence was sufficient to sustain the verdict. *Commonwealth v. Jarowecki*, 923 A.2d 425, 433 (Pa.Super.2007), *appeal granted in part, denied in part*, 596 Pa. 586, 947 A.2d 713 (2008) (citing *Commonwealth v. Davis*, 799 A.2d 860, 865 (Pa.Super.2002)). In any event, for the reasons set forth below, we find Appellant has waived any challenge to the sufficiency of the evidence raised in his first claim.

¶ 5 In *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa.Super.2008), this

---

6. Although not explicitly stated in his 1925(b) statement or the brief's "Statement of Questions Involved," Appellant argues this issue as a general challenge to the sufficiency of the evidence in the argument section of his brief.

Court stated, "[i]f Appellant wants to preserve a claim that the evidence was insufficient, then the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient. This Court can then analyze the element or elements on appeal."

¶ 6 The instant 1925(b) statement language does not specify how the evidence failed to establish which element or elements of the offenses for which Appellant was convicted. As this Court stated in *Williams,* the 1925(b) statement is required to determine "[w]hich elements of which offense[s] were unproven? What part of the case did the Commonwealth not prove?" *Williams,* 959 A.2d at 1257. In fact, the 1925(b) statement, as well as the "Statement of Questions Involved" section of his brief, does not explicitly state that the first issue is even a challenge to the sufficiency of the evidence. Furthermore, although the argument section of Appellant's brief presents a vague, undeveloped sufficiency challenge under the first issue, it also does not specify the allegedly unproven elements. Therefore, Appellant's first claim is deemed waived.[7]

¶ 7 Appellant next argues that the verdict was against the weight of the evidence. Appellant argues that the testimony of the victim, Taaqi Brown, and that of Appellant's cellmate, Shieed Brown, was not credible. Appellant claims that the only unbiased credible witness to testify was Appellant's witness, Isa Williams, who testified that Appellant attended a party the night of the shooting. Appellant's Brief at 17–18.

¶ 8 An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Dupre,* 866 A.2d 1089, 1101 (Pa.Super.2005), *appeal denied,* 583 Pa. 694, 879 A.2d 781 (2005) (citing *Commonwealth v. Sullivan,* 820 A.2d 795, 805–806 (Pa.Super.2003), *appeal denied,* 574 Pa. 773, 833 A.2d 143 (2003) (quoting *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 751–752 (2000))). The Pennsylvania Supreme Court has explained that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Widmer,* 744 A.2d at 753 (citation omitted). To grant a new trial on the basis that the verdict is against the weight of the evidence, this Court has explained that "the evidence must be 'so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Sullivan,* 820 A.2d at 806 (quoting *Commonwealth v. La,* 433 Pa.Super. 432, 640 A.2d 1336, 1351 (1994), *appeal denied,* 540 Pa. 597, 655 A.2d 986 (1994)).

¶ 9 In the present case, Appellant essentially asks us to reassess the credibility of the witnesses. However, it is well settled that we cannot substitute our judgment for that of the trier of fact. *Commonwealth v. Holley,* 945 A.2d 241, 246 (Pa.Super.2008). Further, the finder of fact was free to believe the Commonwealth's witnesses and to disbelieve the witness for the Appellant. *See Commonwealth v. Griscavage,* 512 Pa. 540, 517 A.2d 1256 (1986) (the finder of fact is free to believe all, none, or part of the testimony presented at trial). Upon review, we conclude that the verdict in this case is not so contrary to the evidence as to shock the conscience of this Court. Thus, Appellant's second claim fails.

■ ¶ 10 Appellant next claims that the trial court erred in failing to grant Appel-

---

7. We note that even if we were to consider the merits of Appellant's first allegation of error, we would agree with the trial court that the evidence was more than sufficient to sustain the jury verdict.

lant's Motion to Suppress Identification Evidence because the victim's identification was based on an allegedly suggestive photo array. When evaluating a trial court's refusal to suppress evidence, we must determine:

> whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. Our scope of review is limited; we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

*Commonwealth v. Patterson,* 940 A.2d 493, 502 (Pa.Super.2007), appeal denied, 599 Pa. 691, 960 A.2d 838 (2008) (quoting *Commonwealth v. Stevenson,* 832 A.2d 1123, 1126 (Pa.Super.2003)).

¶ 11 As an appellate court, our review is limited by the contents of the certified record. Pa.R.A.P.1921; *Commonwealth v. Young,* 456 Pa. 102, 115, 317 A.2d 258, 264 (1974) ("only the facts that appear in [the] record may be considered by a court"). The law of Pennsylvania is well settled that matters which are not of record cannot be considered on appeal. *Commonwealth v. Preston,* 904 A.2d 1, 6 (Pa.Super.2006) (en banc), appeal denied, 591 Pa. 663, 916 A.2d 632 (2007); *Commonwealth v. Bracalielly,* 540 Pa. 460, 475, 658 A.2d 755, 763 (1995); *Commonwealth v. Baker,* 531 Pa. 541, 559, 614 A.2d 663, 672 (1992); *Young,* 317 A.2d at 264. Thus, an appellate court is limited to considering only the materials in the certified record when resolving an issue. *Preston,* 904 A.2d at 6 (citing *Commonwealth v. Walker,* 878 A.2d 887, 888 (Pa.Super.2005)).

¶ 12 All documents in a criminal matter must be filed with the clerk of courts in order to become part of the certified record. 42 Pa.C.S.A. § 2756(a)(1). Additionally, Appellant has the duty to ensure that all documents essential to his case are included in the certified record. As this Court has previously stated, "[i]t is the obligation of the [A]ppellant to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Walker,* 878 A.2d at 888 (citing *Fiore v. Oakwood Plaza Shopping Ctr.,* 401 Pa.Super. 446, 585 A.2d 1012, 1019 (1991)). If a document is not in the certified record then this Court cannot take it into account. *Walker,* 878 A.2d at 888.

¶ 13 In the instant case, although Appellant argues that the photo array was unduly suggestive because Appellant's photograph was the only photograph containing a Sunni-style beard and also because Appellant's head appeared larger than the others pictured, Appellant failed to ensure that the certified record contained a copy of the photo array in question.

¶ 14 "A failure by [A]ppellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes waiver of the issue sought to be examined." *Commonwealth v. Martz,* 926 A.2d 514, 525 (Pa.Super.2007), *appeal denied,* 596 Pa. 704, 940 A.2d 363, (2008) (quoting *Commonwealth v. Boyd,* 451 Pa.Super. 404, 679 A.2d 1284, 1290 (1996), *appeal denied,* 547 Pa. 723, 689 A.2d 230 (1997) (quoting *Smith v. Smith,* 431 Pa.Super. 588, 637 A.2d 622, 623 (1993), *allocatur denied,* 539 Pa. 680, 652 A.2d 1325 (1994))). Because we have not been furnished with a copy of the photo array in question in the record, the issue challenging suppression of the photo

array is deemed waived. *Martz*, 926 A.2d at 525 (citing *Boyd*, 679 A.2d at 1290).

¶ 15 Next, Appellant contends that the court erred in refusing to permit Appellant's questioning of prospective jurors as to their bias/prejudice toward an eyewitness to a crime if the prospective juror had been an eyewitness to a crime. The scope of *voir dire* rests in the sound discretion of the trial court, whose decision will not be reversed on appeal absent palpable error. *Commonwealth v. Floyd*, 937 A.2d 494, 502 (Pa.Super.2007) (citing *Commonwealth v. Bridges*, 563 Pa. 1, 27, 757 A.2d 859, 872 (2000)). The purpose of *voir dire* is solely to ensure the empanelling of a competent, fair, impartial, and unprejudiced jury capable of following the instructions of the trial court. *Bridges*, 757 A.2d at 872. Neither counsel for the defendant nor the Commonwealth should be permitted to ask direct or hypothetical questions designed to disclose a juror's present impression or opinion as to what his decision will likely be under certain facts which may be developed in the trial of the case. *Floyd*, 937 A.2d at 502. "*Voir dire* is not to be utilized as a tool for the attorneys to ascertain the effectiveness of potential trial strategies." *Id.* at 502–503 (quoting *Commonwealth v. Paolello*, 542 Pa. 47, 70, 665 A.2d 439, 451 (1995)).

¶ 16 In the instant case, defense counsel inquired of Prospective Juror No. 13: "[w]ould you be more likely to believe the testimony of an eyewitness because of your experience [as an eyewitness to a separate crime]?" and the trial court sustained the prosecutor's objection to the question. N.T., 7/25/07, at 122, 123. We find that the trial court did not abuse its discretion nor commit an error of law in refusing to allow Appellant's proposed *voir dire* question to be asked to the prospective juror.

¶ 17 Furthermore, prior to this question being posed to Prospective Juror No. 13 by defense counsel, the trial court engaged in the following line of questioning with the same potential juror:

THE COURT: You've also indicated that you know someone who's been an eyewitness to a crime. Who was that?

PROSPECTIVE JUROR NO. 13: Myself.

THE COURT: What did you witness?

PROSPECTIVE JUROR NO. 13: Someone getting shot across the street from where I live.

THE COURT: When did this happen?

PROSPECTIVE JUROR NO. 13: 2002 or '3 maybe.

THE COURT: Was someone arrested for that?

PROSPECTIVE JUROR NO. 13: Yes, ma'am.

THE COURT: Did you have to testify in court?

PROSPECTIVE JUROR NO. 13: No.

THE COURT: Did you give a statement to police?

PROSPECTIVE JUROR NO. 13: Yes, ma'am.

THE COURT: And is there anything about what happened to your mom or anything about what you observed that would affect your ability to be a fair witness—oh, I'm sorry, a fair juror in this trial?

PROSPECTIVE JUROR NO. 13: No, ma'am.

THE COURT: And, now, you witnessed a shooting and you heard that this case involves allegations of a shooting, would that in any way affect your ability to serve fairly as a juror in this case?

PROSPECTIVE JUROR NO. 13: No, ma'am.

**THE COURT:** So you can put aside that situation and judge this case only on the evidence presented and be fair? **PROSPECTIVE JUROR NO. 13:** Yes, ma'am.

N.T., 7/25/07, at 118.

¶ 18 In his brief, Appellant ignores the fact that the trial court did present questions to Prospective Juror No. 13 which directly probed into whether the juror's previous experience as an eyewitness would affect her ability to be a fair juror in this case. The trial court's questions were more than adequate to elicit any possible bias or prejudice the juror may have had following her experience as an eyewitness to an event. Thus, Appellant's fourth claim fails.

¶ 19 Next, Appellant asserts that the court erred in admitting the victim's statement contained in the Philadelphia Police Report 75–48 as an excited utterance. He claims that the trial court erred in admitting the statement because the victim spoke to other people prior to making the statement, the statement was in response to specific questions posed by the investigating officer, and the statement was in a narrative form. Appellant's Brief at 25.

¶ 20 A trial court's rulings on evidentiary questions are controlled by the discretion of the trial court and will not be reversed absent a clear abuse of that discretion. *Commonwealth v. Jones,* 590 Pa. 202, 225, 912 A.2d 268, 281 (2006) (*plurality opinion*) (citing *Commonwealth v. Cargo,* 498 Pa. 5, 15, 444 A.2d 639, 644 (1982)).

¶ 21 Pennsylvania Rule of Evidence 803(2) allows for the admission of an excited utterance as an exception to the hearsay rule. Rule 803(2) defines an excited utterance as: "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Pa.R.E. 803(2). Under Rule 803(2), for a statement to be an excited utterance, it must be:

[A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.... Thus, it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective thought processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event.

*Commonwealth v. Stallworth,* 566 Pa. 349, 366–367, 781 A.2d 110, 119–120 (2001) (quoting *Commonwealth v. Stokes,* 532 Pa. 242, 615 A.2d 704, 712 (1992) (quoting *Commonwealth v. Green,* 487 Pa. 322, 409 A.2d 371, 373–374 (1979))).

¶ 22 In determining whether a statement is an excited utterance and, thus, admissible under the excited utterance hearsay exception, there is no bright line rule as to the amount of time which has elapsed between the incident and the witness' statement. Rather the crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance. *Croyle v. Smith,* 918 A.2d 142 (Pa.Super.2007).

¶ 23 In the present case, the victim testified that he left his sister's house some-

time between 8:45 p.m. and 8:50 p.m. and was shot five (5) times thereafter while walking to his father's house. N.T., 7/27/07, 48–54, 59. Police Officer Daniel Richardson testified that he was dispatched at 8:53 p.m. to the victim's father's house. *Id.* at 98–99. Officer Richardson testified that he interviewed the victim shortly after the shooting and that the victim was in a panicked and emotional state with multiple gunshot wounds when he provided the description of his assailants. Officer Richardson further described that things were very excited when he arrived at the house where he spoke to the victim. *Id.* at 99–101, 104–105.

¶ 24 We discern no error on the part of the trial court in admitting the statement under the excited utterance hearsay exception. Only a short time after being shot multiple times the victim provided the description of his assailants. The victim did so while bleeding from his gunshot wounds and awaiting transport to the hospital. The Supreme Court of Pennsylvania has held similar statements admissible under the excited utterance exception to the prohibition on hearsay statements. *See e.g., Commonwealth v. Jones,* 590 Pa. 202, 226, 912 A.2d 268, 282 (2006) (shooting victim's statement identifying defendant as one of the shooters, made less than ten minutes after being shot, while victim was bleeding from his gunshot wound and awaiting transport to the hospital, as well as second statement to police, made approximately 30 minutes later, were admissible under the excited utterance exception to the hearsay rule, in murder prosecution, even if statements were made in response to questioning); *Commonwealth v. Penn,* 497 Pa. 232, 241–242, 439 A.2d 1154, 1159 (1982), *cert. denied, Penn v. Pennsylvania,* 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982) (witness' testimony that victim's son had told him within half-hour of murder that defendant had killed victim was

admissible as an excited utterance where son was visibly upset and shaken from witnessing mother's stabbing when he made the statement in response to a question by the police officer). We conclude that the statements of the victim were admitted properly pursuant to the excited utterance exception to the hearsay rule and that Appellant's fifth claim lacks merit.

¶ 25 In Appellant's next two issues he claims that the court erred in failing to grant his motions for a mistrial. The standard governing our review of a trial court's refusal to grant a request for a mistrial has been well summarized by this Court as follows:

> The decision to declare a mistrial is within the sound discretion of the court and will not be reversed absent a "flagrant abuse of discretion." *Commonwealth v. Cottam,* 420 Pa.Super. 311, 616 A.2d 988, 997 (1992); *Commonwealth v. Gonzales,* 415 Pa.Super. 564, 609 A.2d 1368, 1370–71 (1992). A mistrial is an "extreme remedy ... [that] ... must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial." *Commonwealth v. Vazquez,* 421 Pa.Super. 184, 617 A.2d 786, 787–88 (1992) (citing *Commonwealth v. Chestnut,* 511 Pa. 169, 512 A.2d 603 (Pa.1986), and *Commonwealth v. Brinkley,* 505 Pa. 442, 480 A.2d 980 (Pa.1984)). A trial court may remove taint caused by improper testimony through curative instructions. *Commonwealth v. Savage,* 529 Pa. 108, 602 A.2d 309, 312–13 (Pa.1992); *Commonwealth v. Richardson,* 496 Pa. 521, 437 A.2d 1162 (Pa.1981). Courts must consider all surrounding circumstances before finding that curative instructions were insufficient and the extreme remedy of a mistrial is required. *Richardson,* 496 Pa. at 526–527, 437 A.2d at 1165. The

circumstances which the court must consider include whether the improper remark was intentionally elicited by the Commonwealth, whether the answer was responsive to the question posed, whether the Commonwealth exploited the reference, and whether the curative instruction was appropriate. *Id.* *Commonwealth v. Bracey,* 831 A.2d 678, 682–683 (Pa.Super.2003), appeal denied, 577 Pa. 685, 844 A.2d 551 (2004) (citing *Commonwealth v. Stilléy,* 455 Pa.Super. 543, 689 A.2d 242, 250 (1997)). Appellant's first assertion of error for failing to grant a mistrial occurred where evidence was adduced that the Appellant smoked marijuana. In support of this position, Appellant asserts that the prosecutor intentionally pursued a line of questioning knowing that these questions would improperly extract from Commonwealth witness Shieed Brown that his involvement with Appellant was drug related. During direct examination of Shieed Brown the following exchange occurred: [8]

Q. Okay. And, now, did you know the Defendant when you were not incarcerated?

A. Yes, yes.

Q. And how did you know each other?

DEFENSE COUNSEL: Objection.

A. I bought marijuana off him before.

DEFENSE COUNSEL: Objection.

THE COURT: Sustained. Stricken. And the jury will disregard that.

BY [THE PROSECUTOR]:

Q. Did you see each other?

A. I bought marijuana off him before.

DEFENSE COUNSEL: Objection, Judge.

THE COURT: Sustained. The jury will disregard. I'll hold it under advisement, Counsel.

DEFENSE COUNSEL: Thank you, Your Honor.

N.T., 7/27/07, at 120. At the close of Shieed Brown's testimony defense counsel requested a mistrial. The trial court denied the request, but granted Appellant the right to a curative instruction on the issue. N.T., 7/27/07, at 133–134, 138.

¶ 26 As previously noted, the review of a trial court's denial of a motion for a mistrial is limited to determining whether the trial court abused its discretion. *Commonwealth v. Simpson,* 562 Pa. 255, 270–271, 754 A.2d 1264, 1272 (2000). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will … discretion is abused." *Christianson v. Ely,* 575 Pa. 647, 655, 838 A.2d

---

8. During re-direct examination Commonwealth witness Shieed Brown again testified that he bought marijuana from Appellant. Defense counsel objected to Mr. Brown's statement and the objection was sustained; however, defense counsel did not request a mistrial. N.T., 7/30/07, at 58–59. In such a case where the trial court has sustained the objection, even where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver. *Commonwealth v. Strunk,* 953 A.2d 577, 579–580 (Pa.Super.2008) (citing *Commonwealth v. Jones,* 501 Pa. 162, 460 A.2d 739 (1983))

(claim of prosecutorial misconduct waived where defense counsel immediately objected to the prosecutor's conduct but failed to request mistrial or curative instructions); *Commonwealth v. Chimenti,* 362 Pa.Super. 350, 524 A.2d 913, 921 (1987), appeal denied, 516 Pa. 639, 533 A.2d 711 (1987) (issue was waived where defense counsel objected to a question posed by the prosecutor but failed to ask the trial judge to do anything further after the question had been answered). Similarly, in the present case, we conclude that Appellant waived this issue as to Shieed Brown's re-direct examination on July 30, 2007.

630, 634 (2003) (internal quotations omitted). A trial court may grant a mistrial only "where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Simpson*, 754 A.2d at 1272.

¶ 27 Here, the trial court issued an immediate cautionary instruction for the jury to disregard the marijuana reference. Furthermore, before jury deliberations commenced, the court instructed the jury as follows:

> You have also heard testimony tending to show that the [Appellant] engaged in improper conduct for which he is not on trial. This evidence must not be considered by you in any way. You must [not] regard this evidence as showing the [Appellant] is a person of bad character, or criminal tendencies from which you might be inclined to infer guilt. If you find the [Appellant] guilty, it must be because you are convinced by the evidence that he committed a crime, the crimes charged in this case, and not because he is guilty or has committed other improper conduct.

N.T., 7/31/07, at 141–142.

¶ 28 In the case *sub judice*, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for a mistrial based on Brown's testimony. The trial court promptly and thoroughly cautioned the jury to disregard Brown's statement. The trial court further explained to the jury before jury deliberations began that they could not consider Appellant's prior improper conduct for any purpose. It is well settled that juries are presumed to follow the instructions of a trial court to disregard inadmissible evidence. *Simpson*, 754 A.2d at 1272–1273 (citing *Commonwealth v. Miller*, 541 Pa. 531, 551 n. 15, 664 A.2d 1310, 1319 n. 15 (1995), *cert.*

*denied*, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996)). Appellant has offered nothing to rebut the presumption that the jury followed the trial court's instructions. *See Simpson*, 754 A.2d at 1272 (jury is presumed to follow trial court's instructions to disregard inadmissible evidence).

■ ¶ 29 Appellant also argues under his sixth issue that the court erred in denying his motion for a mistrial due to remarks made by the prosecutor during closing arguments. Appellant cites the following remarks, made by the prosecutor during her closing argument, as grounds for the trial court's error:

**PROSECUTION:** He not only had time to get rid of that gun, he had time to smoke some blunts, or whatever he did to get whatever kind of demeanor—

**DEFENSE COUNSEL:** Objection.

**THE COURT:** Sustained as to smoke some blunts. That will be stricken jurors.

**PROSECUTION:** You heard the officer testify that he was disheveled, he appeared incoherent, he was slurring, he didn't appear to—he walked right in the house. And you heard [Shieed] Brown say how they were able to relate to one another as they would get—they would be in the cell room together and they would be smoking blunts. What I'm suggesting to you—

**DEFENSE COUNSEL:** Objection.

**THE COURT:** Overruled.

**PROSECUTION:** That's probably what he did to wind down that night, calm himself after what he had done.

**DEFENSE COUNSEL:** Objection.

**THE COURT:** Sustained.

**DEFENSE COUNSEL:** Motion to strike.

**THE COURT:** Stricken. N.T., 7/31/07, at 122–123.

¶ 30 With specific reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that:

[A] prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Prosecutorial misconduct is evaluated under a harmless error standard.

*Commonwealth v. Judy*, 978 A.2d 1015, ¶ 10 (Pa.Super.2009) (citing *Holley*, 945 A.2d at 250 (internal citations and quotations omitted)).

¶ 31 In determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor are to be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair. *Judy*, 978 A.2d at ¶ 10.

¶ 32 The prosecutor's reference to Appellant smoking blunts with Shieed Brown while they were in federal custody related to evidence which defense counsel elicited during cross-examination of the Commonwealth's witness. N.T., 7/30/07, at 10–11.[9] This comment was not misconduct as it related to evidence which defense counsel herself elicited. Furthermore, during trial Appellant presented an alibi witness who testified that on the night of the shooting Appellant attended a party where alcohol was served. N.T., 7/31/07, at 46–50. Police Officer Mocharnuk testified that when Appellant entered his residence and saw the officers waiting for him he was "disoriented, disheveled, his speech was slurred ..." N.T., 7/30/07, at 140. In an effort to show that Appellant's demeanor was consistent with his alibi of attending a party where alcohol was present, defense counsel stated the following in her closing argument:

[b]ut, the bottom line is that he was at the party, he was there, and the police officers said that he was slurring his speech, and that he was a little wobbly when they arrested him later on. He was at a party. You heard there wasn't just a tattoo artist at the party, there was alcohol at the party. So, that is perfectly consistent with the fact that he had been at a party.

N.T., 7/31/07, at 102–103.

¶ 33 The prosecutor's statement, "he had time to smoke some blunts, or whatever he

---

9. The following exchange occurred between defense counsel and the Commonwealth's witness, Shieed Brown:

**Q:** And at some point in time you and Mr. Manley were cellmates together; is that right?
**A:** Yes.

\*　　\*　　\*

**Q:** And you said that you used to smoke weed and cigarettes together at prison?
**A:** Yes. They sell there.

**Q:** So, you used to smoke marijuana at the prison?
**A:** Yes.

\*　　\*　　\*

**Q:** And you knew that was illegal?
**A:** Yes.
**Q:** So that really wasn't the right thing to do, was it?
**A:** For neither one of us. *We* done it.
N.T., 7/30/07, at 10–11 (emphasis added).

did to get whatever kind of demeanor," N.T., 7/31/07, at 122, was a rebuttal to defense counsel's assertion that Appellant had been drinking at a party. The prosecutor was attempting to offer an alternate reason why Appellant's demeanor was as the Officer described. As stated by our Supreme Court, "[a] remark by a prosecutor, otherwise improper, may be appropriate if it is in fair response to the argument and comment of defense counsel." *Commonwealth v. Trivigno*, 561 Pa. 232, 244, 750 A.2d 243, 249 (2000) (*plurality opinion*) (citing *United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988)). In the case *sub judice*, the prosecutor's remarks were made in response to defense counsel's closing argument. The remarks were not of a nature or kind as to have the unavoidable effect of prejudicing the jurors by forming in their minds a fixed bias and hostility toward the Appellant. Error was not committed. Thus, Appellant's sixth claim lacks merit.

¶ 34 Appellant next asserts that the trial court erred in failing to grant a mistrial when evidence was adduced that Appellant had been in federal custody. During cross-examination, defense counsel questioned Shieed Brown as to when he spoke to the federal authorities about this case. The following exchange occurred:

> MS. LITWIN: Sir, you talked to the— you decided to speak with the federal authorities about this case; is that correct?

WITNESS: Yes.

MS. LITWIN: And you did that when?

WITNESS: When [Appellant] came into federal custody and he was telling me about his federal case.

MS. LITWIN: Objection, Judge, Objection.

THE COURT: You asked the question, Counsel.

N.T., 7/30/07, at 16–17.

¶ 35 The Pennsylvania Supreme Court has explained that "[i]n general, a party may not object to improper testimony which he himself elicits." *Commonwealth v. Yarris*, 519 Pa. 571, 595, 549 A.2d 513, 525 (1988); *Commonwealth v. Puksar*, 559 Pa. 358, 372, 740 A.2d 219, 227 (1999); *Commonwealth v. McDuffie*, 476 Pa. 321, 324, 382 A.2d 1191, 1192 (1978) (*plurality opinion*).[10]

¶ 36 As the trial court in the present case explained when Appellant requested a mistrial, defense counsel opened the door by asking Shieed Brown the question which elicited the improper testimony. N.T., 7/30/07, at 40. The trial court correctly denied Appellant's motion for a mistrial because Appellant may not object to, or have stricken, otherwise inadmissible evidence that defense counsel elicits on cross-examination. *Puksar*, 740 A.2d at 227.

¶ 37 Furthermore, defense counsel stipulated to the fact that Appellant was incarcerated prior to trial and that he and Mr.

---

**10.** The Supreme Court in *McDuffie* ultimately determined that the circumstances surrounding the motion to strike in that case warranted an exception to this general rule, since a review of the record indicated that the witness was not being responsive to defense counsel's questions and, thus, the statements made by the witness could not be construed as being elicited by defense counsel. *McDuffie*, 382 A.2d at 1192. No such exception is warranted in the instant case, as Mr. Brown's testimony was directly responsive to defense counsel's questions, even if it was not the response counsel was hoping for. *Puksar*, 559 Pa. at 372, 740 A.2d at 227. Furthermore, the testimony in *McDuffie* was to the effect that appellant had previously been convicted of another homicide. *McDuffie*, 382 A.2d at 1191. Such evidence would be highly prejudicial in a murder case as distinguished from the evidence in the present case relating only to a previous incarceration.

Brown were cellmates, thus making the jurors aware of Appellant's previous incarceration. N.T., 7/31/07, at 32–34. Also, the court granted defense counsel's request for a cautionary instruction. N.T., 7/31/07, at 70–72. Prior to the commencement of jury deliberations the court charged the jury as follows:

> You have heard testimony to the effect that the [Appellant] is or was at one time in federal custody.... This evidence must not be considered by you in any way. You must [not] regard this evidence as showing that the [Appellant] is a person of bad character, or criminal tendencies from which you might be inclined to infer guilt. If you find the [Appellant] guilty, it must be because you are convinced by the evidence that he committed a crime, the crimes charged in this case, and not because he is guilty or has committed other improper conduct.

N.T., 7/31/07, at 141–142. Considering the cautionary instruction granted by the trial court, along with the fact that defense counsel herself elicited the improper testimony, the trial court's denial of a mistrial was proper. Thus, Appellant's seventh claim fails.

¶ 38 Appellant next claims that the trial court erred in failing to take judicial notice of the Federal Sentencing Guidelines. Commonwealth witness Shieed Brown testified against Appellant as part of a guilty plea agreement that he had with the federal government in an unrelated case. N.T., 7/30/07, at 7–8. During defense counsel's cross-examination of Mr. Brown, counsel asked the witness whether he received a three-point downward departure in his sentence for pleading guilty. *Id.* at 28. Counsel then asked Mr. Brown whether the downward departure would bring his minimum sentence to 262 to 327 months, to which Mr. Brown answered he was not sure. *Id.* at 28. Counsel then requested that the trial court take judicial notice of the Federal Sentencing Guidelines, which request was denied by the trial court. *Id.* at 28–29.

¶ 39 Under 42 Pa.C.S.A. § 5327, a court may take judicial notice of the law of any jurisdiction outside the Commonwealth of Pennsylvania. However, a party who wishes to raise an issue concerning the laws of another jurisdiction, in this case the Federal Sentencing Guidelines, must give written notice of his or her intentions. *See* 42 Pa.C.S.A. § 5327(a) ("[a] party who intends to raise an issue concerning the law of any jurisdiction or governmental unit thereof outside this Commonwealth **shall give notice** in his pleadings or other reasonable written notice" (emphasis added)).

¶ 40 In Appellant's brief, counsel admits that she did not provide written notice of her intent to use the Federal Sentencing Guidelines. Appellant's Brief at 35. Because defense counsel failed to provide the requisite notice of her intent to raise an issue regarding the application of the Federal Sentencing Guidelines to Mr. Brown's sentence, the trial court did not err in denying her request.

¶ 41 Next, Appellant claims that the trial court erred in denying Appellant's motion for judgment of acquittal on the charge of attempted murder.[11] A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden

---

11. Appellant incorrectly uses the terms "Motion for Directed Verdict" and "Motion for Judgment of Acquittal" interchangeably within his brief to refer to this motion. Appellant's Brief at V, 4, 38–39.

regarding that charge. *Commonwealth. v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super.2006), *appeal denied*, 592 Pa. 778, 926 A.2d 972 (2007).

¶ 42 The standard we apply in reviewing the sufficiency of the evidence is:

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Andrulewicz*, 911 A.2d at 165 (citing *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa.Super.2001), *appeal denied*, 569 Pa. 716, 806 A.2d 858 (2002)).

¶ 43 Appellant premises this argument on the fact that, while a deadly weapon was used in the instant case, the Commonwealth failed to introduce any testimony that the weapon was fired at a vital organ of the victim. Appellant contends that since the shots were made a mere 2–3 feet away from the victim, had the weapon been aimed at his head, the victim would have been killed. Appellant's Brief at 39. However, Appellant's poor aim does not constitute a lack of malice. As the Pennsylvania Supreme Court has previously stated,

we are not persuaded that it must be shown that the bullet fired from a revolver, a deadly weapon, initially entered a vital organ before the inference of specific intent to kill can arise. The firing of a bullet in the general area in which vital organs are located can in and of itself be sufficient to prove specific intent to kill beyond a reasonable doubt.

*Commonwealth v. Padgett*, 465 Pa. 1, 5, 348 A.2d 87, 88 (1975).

¶ 44 Here, the evidence reveals that Appellant attacked the victim, shooting multiple shots, five of which hit the victim. The victim was struck in the groin, thigh, shoulder and twice in the hand. Although none of the bullets hit the victim in a vital organ, the jury could properly infer the specific intent to kill from these circumstances. *See Commonwealth v. Wyche*, 320 Pa.Super. 483, 467 A.2d 636, 637 (1983) ("appellant aggressively attacked the victim, shooting four shots, three of which hit their target. Although the fatal slug entered the victim through the buttock, the jury could properly infer the specific intent to kill from these circumstances"). Thus, Appellant's ninth claim fails.

¶ 45 Appellant finally contends that the trial court erred in permitting the stenographer to read directly from the Philadelphia Police Report 75–48 instead of reading back the testimony of the police officer in response to a request from the jury. During jury deliberations, the jurors requested that the court provide them with a copy of the Philadelphia Police Re-

port 75–48, that contained the victim's excited utterance, which was marked as an exhibit. When the court asked the jurors what specifically they would like to know about the report, the jurors responded that they would like the exact descriptions of the shooters per the victim from the police report and the time the original police report was made. N.T., 8/1/07, at 3–5, 13. The court chose not to send the exhibit back with the jurors during deliberations, but did allow the stenographer to read to the jurors from the report the physical descriptions of the shooters as well as the time of the occurrence written on the report. N.T., 8/1/07, at 20–22.

¶ 46 Pennsylvania Rule of Criminal Procedure 646, Material Permitted in Possession of the Jury, provides that the jury may take with it such exhibits as the trial judge deems proper. Pa.R.Crim.P. 646(A). Thus, whether an exhibit should be allowed to go out with the jury during deliberation is within the discretion of the trial judge, and such decision will not be overturned absent an abuse of discretion. *Commonwealth v. Dupre,* 866 A.2d 1089, 1102–1103 (Pa.Super.2005); *Commonwealth v. Fox,* 422 Pa.Super. 224, 619 A.2d 327, 330 (1993), *appeal denied,* 535 Pa. 659, 634 A.2d 222 (1993).

 ¶ 47 Furthermore, as this Court has previously stated, "[w]hen a jury requests that recorded testimony be read to it to refresh its memory, it rests within the trial court's discretion to grant or deny such request." *Commonwealth v. Gladden,* 445 Pa.Super. 434, 665 A.2d 1201, 1205 (1995) (*en banc* ), *appeal denied,* 544 Pa. 624, 675 A.2d 1243 (1996) (quoting *Commonwealth v. Johnson,* 421 Pa.Super. 433, 618 A.2d 415, 418 (1992) (citing *Commonwealth v. Bell,* 328 Pa.Super. 35, 476 A.2d 439 (1984))). As long as there is not a flagrant abuse of discretion, this decision should not be overturned on appeal.

*Gladden,* 665 A.2d at 1205 (citing *Commonwealth v. Fontaine,* 183 Pa.Super. 45, 128 A.2d 131, 132 (1956)).

¶ 48 It was within the trial court's discretion whether to allow the jury to take the police report with them as it was an exhibit. The jury did not request to have the Police Officer's testimony read back to them. Instead, they requested the actual police report that contained the victim's excited utterance. Rather than have the jury take the physical exhibit with them, the trial court chose to read to them from the report in order to refresh their recollection. It was within the trial court's sound discretion to read from the police report rather than from the officer's testimony. Therefore, error was not committed.

¶ 49 For the foregoing reasons, we conclude that Appellant is entitled to no relief. Accordingly, the judgment of sentence is affirmed.

¶ 50 Judgment of sentence affirmed.