J-S28027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WESTON ROBERT GREEN, JR. | : | |
| | : | |
| Appellant | : | No. 168 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 21, 2018
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0001744-2016

BEFORE:   BOWES, J., McLAUGHLIN, J., and STRASSBURGER*, J.

MEMORANDUM BY McLAUGHLIN, J.:              **FILED SEPTEMBER 04, 2019**

Weston Robert Green, Jr., appeals from the judgment of sentence entered following his jury convictions for one count of false imprisonment and three counts of attempt to commit indecent assault.[1] He challenges the weight of the evidence. We affirm.

The Commonwealth presented the following evidence at trial. The victim, D.T., and Green were coworkers. N.T., Trial, 8/27/18, at 17-18. D.T. testified that she worked with Green for four years and described one encounter with him at their place of employment where he "came up behind me and grabbed my hair and asked if I liked that." *Id.* at 77. She testified

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2903(a), 901(a), and 3126(a)(2), respectively.

that her encounters with Green were "usually always sexual" and that it made her "uncomfortable." *Id.*

On the day of the incident she drove to Walmart to cash her paycheck. *Id.* at 74. Green was in line at the customer service desk. *Id.* at 75. Once she cashed her paycheck, she returned to her vehicle where she saw Green parked across from her. *Id.* at 80. Green walked over to her vehicle and "asked if he could see my pussy and I told him no." *Id.* She testified that asking this type of question was not out of character for Green, so she changed the subject to their plans for Memorial Day weekend. *Id.* at 80, 81. Green changed the topic back to "sexual things" and "told [the victim] to get in the back of my car so he could show me what a real man is." *Id.* at 82. She told Green she had to go and tried to close her door but Green prevented this by "put[ting] his body in front of my door so I couldn't shut it." *Id.*

Green grabbed her wrists, held them against her chest, and "tried shoving his hands down my pants." *Id.* at 82-83. She testified that she did not drive away "because he was holding me down most of the time." *Id.* at 98. He was able to reach inside the front of her pants but did not touch her genital area. *Id.* at 83, 98. She tried to shove him away with her elbow, but "he immediately came back and tried to like roll me into the back of my car, but I like braced myself with my leg." *Id.*

Green then attempted to put his hands down her pants a second time and also tried reaching down the front of her shirt but did not make contact with her body. *Id.* at. 84, 98. While trying to touch the victim, Green said "he

- 2 -

wanted to show me what a real man is and that he wanted to do like oral sex on me." *Id.* The victim continued to tell him no and began to yell for a fellow coworker, Joe, who was pulling into the parking lot. *Id.* Joe began to walk over to her vehicle and Green left. *Id.* She told Joe that Green tried to kiss and touch her but did not go into detail about him putting his hands down her pants or shirt. *Id.* at 85. She reported the assault approximately three weeks later "because I worked with [Green] and his girlfriend and I just didn't want to create any drama, and I figured if I just kept my distance, that he would just let it be." *Id.* at 86.

Trooper Lindsey Trace testified that he spoke with the victim a "couple weeks" after the incident. *Id.* at 40. After speaking with the victim he recovered surveillance video from Walmart.[2] *Id.* at 26-27. He identified the victim and Green in the surveillance video and testified to portions of the video. *Id.* at 28-29. He testified that the video showed the victim getting into her vehicle and five seconds later Green appearing by her vehicle. *Id.* at 37. He also said that the victim told him that she spoke with Green for about "[ten] or so or more minutes," during which time Green said "more verbal or dirty talk or sexual harassment type things." *Id.* at 53. During a portion of the video, he testified that Green "gets closer into the [victim's] vehicle" and later "leav[es] the area of the vehicle" moving "pretty quickly" to his vehicle. *Id.* at 38-39, 55. Additionally, he testified that seconds passed between the time

---

[2] The surveillance footage was included in the certified record, however, we were unable to play the video.

- 3 -

Joe was seen approaching the victim's vehicle and Green heads towards his vehicle. *Id.* at 39.

Trooper Trace admitted that for ten minutes of the video "you can see some sort of movement. What that movement is, I wouldn't be able to say." *Id.* at 38. He also agreed that the video does not show "a whole lot of what's going on in the vehicle or outside of the vehicle." *Id.* at 42. He also agreed that there were times that people drove or walked by the victim's vehicle and did not "seem to be alerted to anything happening at the vehicle." *Id.* at 48.

The prosecution also presented the testimony of the victim's coworker who was at the scene, Joe. He testified that on the day of the incident, while walking toward the Walmart, he heard someone yell his name. *Id.* at 57-58. He said that he heard this two to three times, and as he went toward the voice, he saw the victim in her van. *Id.* at 58-59. When he reached her vehicle, he saw Green going to his vehicle, which was on the other side of the victim's van. *Id.* at 59-60. Joe described the victim's demeanor as "on the frantic side, animated." *Id.* at 60. He said the victim told him that "[Green] was reaching inside her car door because she had the window down and he was inside and he was trying to grab her." *Id.* On cross-examination, he remembered telling police that the victim had told him that Green "had his hand on her leg or between her legs somewhere but she didn't specify," and that Green tried to kiss her. *Id.* at. 63.

An acquaintance of the victim and of Green, Misty Carr, testified about past interactions between the victim and Green. She said that on one occasion

- 4 -

at work she saw Green pull the victim's hair and "said that she liked it." *Id.* at 19. On another occasion, she heard Green tell the victim "he would like to bang her just one time." *Id.* During each incident, the victim did not "respond positively" to Green's sexual advances. *Id.* She also testified that she saw Green "physically go behind [the victim] and press up against her" with his penis, but admitted that she did not tell the police about that incident when they interviewed her. *Id.* at 21-22.

Green testified in his own defense. In general terms, he claimed that the victim had been the aggressor in their prior interactions and had in fact sexually assaulted him previously. Regarding the day in question, he said the victim had initiated a sexual discussion with him about her genitals, but denied any physical contact with the victim in the Walmart parking lot.

The jury found Green guilty of the above crimes and the trial court sentenced him to an aggregate term of 20 to 204 months' incarceration. Green filed a post-sentence motion arguing the convictions were against the weight of the evidence, which the trial court denied. This timely appeal followed.

Green raises one issue: "Did the trial court err by finding that the jury's verdicts were not against the weight of the evidence?" Green's Br. at 4. This claim is meritless and warrants no relief.

We do not review directly whether a verdict was against the weight of the evidence. Rather, a defendant must present a weight claim first to the trial court, which, in its discretion, may grant a new trial on a weight claim only if the evidence is "'so tenuous, vague and uncertain that the verdict shocks the

conscience of the court.'" **Commonwealth v. Manley**, 985 A.2d 256, 262 (Pa.Super. 2009) (quoting **Commonwealth v. Sullivan**, 820 A.2d 795, 806 (Pa.Super. 2003)). We then review the trial court's ruling on the weight challenge for an abuse of discretion. **See Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013).

Green claims that the trial court should have granted his weight claim because the testimony from the Commonwealth's witnesses was not credible, while his self-serving testimony was credible. The trial court rejected Green's claim, concluding that the jury's crediting the victim's testimony, and it's disbelieving his testimony, was not shocking:

> The evidence [Green] complains of as not being accorded proper weight by the jury was entirely vetted in front of the jury, and argument made thereon by counsel. The jury heard the victim's testimony regarding calling for help, heard her testimony regarding the actions of [Green] in her car, and had a full opportunity to view the surveillance video. . . . If the jury determined the victim's testimony was not corroborated by the video, and her prior statements to the police were inconsistent, they were free to disregard the video and prior inconsistent statements in favor of credible trial testimony.

Trial Court Opinion, filed 2/6/19, at 11-12.

This was not an abuse of discretion. The jury was presented with two different versions of what occurred on the day of the incident. While the two stories conflicted, it was in the hands of the jury to resolve these contradictions. **See In re J.M.**, 89 A.3d 688, 692 (Pa.Super. 2014) (concluding that where contradiction in testimony exists, the jury is to resolve such contradictions). The jury was free to believe all, some, or none of the

evidence, and here it believed the version of events the prosecution's evidence presented. ***See id.*** at 691. In view of the significant evidence the prosecution produced, we cannot say that the trial court abused its discretion in rejecting Green's weight claim. ***See Manley***, 985 A.2d at 262.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2019