J-S31014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARTIN WALKER | : | |
| | : | |
| Appellant | : | No. 188 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 19, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003247-2020

BEFORE:  OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 17, 2023**

Appellant, Martin Walker, appeals from the judgment of sentence entered on October 19, 2021.  We affirm.

The trial court ably summarized the underlying facts of this case:

> On April 13, 2020, at around 10:15 [p.m., the victim, Mark Johnson ("the Victim")] was walking to a shop on Girard Avenue by Carlisle Street to get cigarettes with two of his friends.  [The Victim] entered the shop and his friends waited outside.  Also outside on Girard Sheet, to the west of the store, was a parked vehicle with [Appellant] in the passenger seat with a group of guys clustered outside of the vehicle. One of the men that was with Appellant went into the shop and exchanged words about a fight that [the Victim] believed had been resolved a year earlier and exited the store.  [The Victim] paid for his cigarettes and exited the store.  As [the Victim] and his friends started walking east on Girard Avenue, the men clustered outside of the vehicle Appellant was sitting in started calling out to [the Victim.  The Victim] stopped in the street of the crosswalk on Carlisle Street and turned around asking what was going on.  As [the Victim] turned to see what was going on, he noticed six to seven men

running up on him, including Appellant who had exited the passenger side of the vehicle he was in.

While panicking, [the Victim] turned to one of his friends and asked for his friend's firearm. [The Victim] took his friend's firearm and held it by his side. However, he did not point the gun at anyone, nor did he use it. While his back was turned, [the Victim] was shot [in his left calf and in his "groin area next to [his femoral] artery." N.T. Trial, 5/12/21, at 59]. He got up and started running. Someone picked [the Victim] up and he was transported to the hospital.

Officer Mark Washel received a radio call reporting the gunshot incident that occurred on Girard Avenue and Carlisle Street. He arrived on location at 10:17 [p.m.], about one minute after receiving the call. He immediately went inside the store to recover video surveillance footage. On video surveillance retrieved, Officer Washel observed Appellant exit the passenger side of a white Dodge Magnum. He also observed Appellant running westbound on Girard [Avenue] and heading towards 15th Street going southbound after Appellant was done firing shots at [the Victim]. He observed the specific articles of clothing Appellant was wearing[,] which [were] a distinct dark colored jacket with navy blue in the center with what appeared to be distinct white sleeves; dark pants with a single thick white stripe down the pants; and gray, white sneakers. Flash information was put out to responding officers which included Officer Miguel Diaz and his partner.

When Officer Diaz and his partner arrived at 16th and Ogden, they observed Appellant walking with another male. Officer Diaz and his partner handcuffed Appellant. Officer Diaz transported Appellant to Temple University Hospital for a post-incident identification by [the Victim]. As Officer Diaz was transporting Appellant through the hallways of Temple Hospital, Appellant was shouting, non-compliant, and continuously stated that "he does not know me, he's going to tell you he does not know me, he doesn't know me." When they arrived in [the Victim's] hospital room, before [the Victim] could give any identification, Appellant again screamed "he does not know me, he's going to tell you he does not know me, tell him you don't know me" in a loud voice. [The Victim] stated that he did not know Appellant

and looked away. Appellant was transported to Central Detectives for further investigation.

Detective Michael Repici and his partner arrived at the scene and retrieved [13] 9-millimeter fired cartridge casings and video surveillance from a store at 1417 Girard Avenue. When Detective Repici arrived at Central Detectives, he swabbed Appellant's hands for gunshot residue. Forensic Scientist, Lacey Shaw from the RJ Lee Group laboratory testified that based on the swab samples (gunshot SEM kits) taken by Detective Repici of Appellant's hands, there were positive component particles of gunshot residue on Appellant's right and left hands. Appellant did not present any witnesses at trial.

Trial Court Opinion, 4/10/23, at 1-4 (citations and footnotes omitted).

A jury found Appellant guilty of attempted murder, aggravated assault, firearms not to be carried without a license, carrying a firearm on the public streets of Philadelphia, and possessing an instrument of crime.[1] On October 19, 2021, the trial court sentenced Appellant to serve an aggregate term of 13-and-one-half to 27 years in prison for his convictions. N.T. Sentencing, 10/19/21, at 41.

Following the *nunc pro tunc* restoration of his direct appellate rights, Appellant filed a timely notice of appeal. Appellant raises one claim on appeal:

1. Should Appellant's judgment of sentence be vacated in relation to the conviction for attempted murder because Appellant did not aim at or fire at or hit a vital part of [the Victim's] body and thereby Appellant did not exhibit specific intent to kill, an element of attempted murder, and there is, thus, insufficient evidence to sustain Appellant's conviction for attempted murder?

---

[1] 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), 6106(a)(1), 6108, and 907(a), respectively.

Appellant's Brief at 4 (some capitalization omitted).

We review Appellant's sufficiency of the evidence challenge under the following standard:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for [that of] the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Callen**, 198 A.3d 1149, 1167 (Pa. Super. 2018) (citations and quotation marks omitted).

As we have held, the elements of attempted murder are as follows:

> Criminal attempt is separately codified at 18 Pa.C.S.A § 901, which states, "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).
>
> Criminal attempt is a specific-intent crime. Thus, attempted murder requires a specific intent to kill. **Commonwealth v. Robertson**, 874 A.2d 1200, 1207 (Pa. Super. 2005) ("For

the Commonwealth to prevail in a conviction of criminal attempt to commit homicide, it must prove beyond a reasonable doubt that the accused with a specific intent to kill took a substantial step towards that goal.").

*Commonwealth v. Palmer*, 192 A.3d 85, 88 (Pa. Super. 2018) (brackets omitted). "Specific intent to kill can be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008). "The presumption from the use of a deadly weapon on a vital part of the body arises from the fact that it is common knowledge that such a use is likely to cause death and therefore a jury may infer that the intent of the person using such a weapon in such a manner was to kill." *Commonwealth v. Kluska*, 3 A.2d 398, 401 (Pa. 1939).

On appeal, Appellant contends that the evidence is insufficient to support his attempted murder conviction because the Commonwealth failed to prove that he possessed the specific intent to kill the Victim. Specifically, Appellant claims, "he did not shoot at a vital part of [the Victim's] body," as he only targeted the Victim's legs. Appellant's Brief at 11. Thus, Appellant argues, the evidence is insufficient to prove that he had the specific intent to kill the Victim. *Id.* As the trial court explained, Appellant's claim fails:

> Viewed in the light most favorable to the Commonwealth, the evidence at trial demonstrated that after [the Victim] entered a shop to get cigarettes, a man came into the shop and exchanged words with him about some fight that occurred a year prior. When [the Victim] exited the shop and started to walk to his destination with his friends, a group of six to seven men started to harass him and began to charge at him.

- 5 -

> Appellant is seen on video surveillance getting out of the passenger side of a white vehicle that was parked outside of the shop, running up to [the Victim] and firing shots at [the Victim], not once, or even three times, but [13] times. This was also corroborated when Detective Repici arrived at the scene and found [13 fired cartridge cases]. [The Victim] fell due to the gunshot wounds, got back up, and proceeded to run for his life.
>
> . . . [A]lthough [the Victim] may not have been struck or hit in a vital part of his organ[s,] he was hit [at least twice, with gunshot wounds to his left calf and his "groin area next to [his femoral] artery." N.T. Trial, 5/12/21, at 59.] While [the Victim's] injuries may not have been life threatening, Pennsylvania courts have held that "the necessary intent for attempted-murder may be inferred from a defendant's conduct of taking aim and firing a shot that narrowly misses the vital organs of another human being." ***Commonwealth v. Jones***, 629 A.2d 133, 135 n.2 (Pa. Super. 1993). . . .
>
> Therefore, there was sufficient evidence beyond a reasonable doubt to prove that Appellant had the requisite *mens rea* to form the specific intent to kill and *actus reus* as it was established that he took substantial steps when he fired a deadly weapon at [the Victim 13] times.

Trial Court Opinion, 4/10/23, at 7-8 (some citations omitted).

We agree with the trial court. Here, Appellant ran towards the Victim and shot at him 13 times, hitting him at least twice, including once near the Victim's femoral artery. Viewing this evidence in the light most favorable to the Commonwealth, the evidence is sufficient to establish that Appellant possessed the specific intent to kill the Victim, as the evidence establishes that Appellant intentionally aimed his weapon at the Victim and then unleashed a sustained volley of gunshots directly at his target, hitting his target twice. Based upon our precedent, these facts are sufficient to establish

that Appellant possessed the specific intent to kill the Victim.[2] *Commonwealth v. Manley*, 985 A.2d 256, 272 (Pa. Super. 2009) ("the evidence reveals that [the defendant] attacked the victim, shooting multiple shots, five of which hit the victim. The victim was struck in the groin, thigh, shoulder and twice in the hand. Although none of the bullets hit the victim in a vital organ, the jury could properly infer the specific intent to kill from these circumstances"); *Commonwealth v. Wyche*, 467 A.2d 636, 637 (Pa. 1983) ("[the defendant] aggressively attacked the victim, shooting four shots, three of which hit their target. Although the fatal slug entered the victim through the buttock, the jury could properly infer the specific intent to kill from these circumstances"). Appellant's claim on appeal thus fails.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judge McLaughlin joins.

Judge Stabile concurs in the result.

---

[2] According to Appellant, the fact that the Victim only suffered gunshot wounds to his legs proves that Appellant was only aiming at the Victim's legs and, thus, that Appellant "did not intend to kill" his target. *See* Appellant's Brief at 11. This claim necessarily fails, as it does not view the evidence in the light most favorable to the Commonwealth. The mere fact that Appellant only hit the Victim in his legs does not prove that Appellant was only aiming at the Victim's legs. Indeed, since Appellant was shooting at a moving target, at night, and from some distance away, the jury could have reasonably concluded that Appellant simply missed his intended, killing shot. *See Manley*, 985 A.2d at 272 ("[the defendant's] poor aim does not constitute a lack of" specific intent to kill).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/17/2023