J-S10010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CARNELL FRAZIER | |
| Appellant | No. 1299 EDA 2014 |

Appeal from the Judgment of Sentence April 21, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011395-2012

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED FEBRUARY 24, 2016**

Appellant, Carnell Frazier, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for carrying firearms on public streets in Philadelphia, possession of a firearm with altered manufacturer's number, possessing instruments of crime, recklessly endangering another person, simple assault, and resisting arrest, and a bench trial conviction of persons not to possess firearms.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to

_____

[1] 18 Pa.C.S.A. §§ 6108, 6110.2(a), 907(a), 2705, 2701(a), 5104, and 6105(a)(1), respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

restate them.

Appellant raises the following issues for our review:

SHOULD THE TRIAL COURT HAVE DECLARED A MISTRIAL AFTER THE PROSECUTOR TWICE MADE WHOLLY IMPROPER REMARKS ABOUT [APPELLANT] DURING HER OPENING STATEMENT?

DID THE TRIAL COURT ERR BY ALLOWING INADMISSIBLE HEARSAY TESTIMONY TO BE INTRODUCED AT TRIAL WITHOUT OFFERING AN ACCOMPANYING CAUTIONARY INSTRUCTION?

(Appellant's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Susan I. Schulman, we conclude Appellant's issues merit no relief. The trial court's opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed January 7, 2015, at 5-7, 12-16) (finding: **(1)** prosecutor's comments that Appellant "runs his home" and "runs his neighborhood" were entirely fair, given evidence in case;[2] evidence presented at trial supported prosecutor's theory that Appellant repeatedly cursed and yelled at his neighbors to stay out of his business and terrorized his neighbors by pointing and waving gun at them inside and outside Appellant's home; Appellant's actions were so menacing that he caused

_____

[2] *Commonwealth v. Bridges*, 563 Pa. 1, 33, 757 A.2d 859, 876 (2000), which the court cites on page 6 of its opinion, has been abrogated on other grounds, unrelated to the proposition upon which the court relies.

entire crowd of neighbors to run inside their homes out of fear; prosecutor's comments were fairly based on evidence of record; **(2)** Appellant concedes that Officer Scott's testimony was admitted to show police course of conduct and what drew officers to 2400 block of Douglas Street, not for truth of matter asserted; Appellant was not prejudiced by Officer Scott's testimony because Officer Scott did not testify that he saw Appellant with gun; Officer Scott testified only that he received dispatch to area of 2400 Douglas Street based on report of black male wearing gray sweatshirt and blue sweatpants waving gun; cautionary instruction was unwarranted where Officer Scott's statements were not offered for truth of matter asserted and did not place gun in Appellant's hands; Sergeant Caputo testified that when he arrived on scene he received tip from two unidentified women who directed him to trash can where he retrieved gun; Sergeant Caputo's testimony showed his course of conduct and what drew him to investigate trash can, and was not offered for truth of matter asserted; jury also heard testimony from witness who saw gun in Appellant's hands, so any prejudice resulting from Sergeant's testimony was outweighed by other properly admitted evidence that supported jury's verdict).  The record supports the trial court's decision; therefore, we have no reason to disturb it.  Moreover, even if the court erred in not issuing a *sua sponte* cautionary instruction regarding the officers' testimony, the error was harmless because an eyewitness testified to seeing Appellant brandish his gun.  ***See Commonwealth v. Mitchell***, 576 Pa. 258,

280, 839 A.2d 202, 214-15 (2003) (stating: "An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict"). Accordingly, we affirm on the basis of the trial court's opinion.

Judgement of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2016

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : CP-51-CR-0011395-2012

VS. :

CARNELL FRAZIER : 1299 EDA 2014

CP-51-CR-0011395-2012 Comm. v. Frazier, Carnell
Opinion

OPINION

7242072031

SCHULMAN, S.I., J.

Carnell Frazier ("Appellant") has appealed this Court's judgment of conviction and sentence. This Court submits the following Opinion in accordance with the requirements of Pa. R.A.P. 1925, and for the reasons set forth herein, recommends that its judgment be affirmed.

PROCEDURAL HISTORY

On March 4, 2014, following a jury trial before this Court, Appellant was convicted of Carrying Firearms on Public Streets or Public Property,[1] Possession of a Firearm with Altered Manufacturer's Number,[2] Possessing an Instrument of Crime ("PIC"),[3] Recklessly Endangering Another Person ("REAP"), Simple Assault,[4] and Resisting Arrest.[5] Additionally, following a subsequent bench trial before this Court, Appellant was convicted of Persons Not to Possess Firearms.[6] On April 21, 2014, upon review of the pre-sentence investigation report ordered by this Court, and consideration of all relevant facts and circumstances of this case, as well as Appellant's significant criminal history, this Court sentenced Appellant to an aggregate term of ten (10) to twenty (20) years' incarceration, with a five (5)-year probationary tail. Appellant

---

[1] 18 Pa.C.S. § 6108.
[2] 18 Pa.C.S. § 6110.2.
[3] 18 Pa.C.S. § 907.
[4] 18 Pa.C.S. § 2701.
[5] 18 Pa.C.S. § 5104.
[6] 18 Pa.C.S. § 6105.

FILED

JAN 07 2015

Criminal Appeals Unit
First Judicial District of PA



subsequently appealed, and this Court ordered him to file a Concise Statement of Matters Complained of on Appeal in accord with Pa. R.A.P. 1925(b). Counsel for Appellant timely complied.

FACTUAL HISTORY

Appellant does not challenge the weight or sufficiency of the evidence supporting his convictions. Accordingly, a brief recitation of the salient facts is in order.

The evidence at trial established that, on June 12, 2012, Appellant and his wife, Nikki Frazier,[7] engaged in a heated domestic dispute inside their residence at 2437 Douglas Street in Philadelphia. According to Mrs. Frazier, the dispute originated when she accused Appellant -- with whom she had two children, and a third "on the way" -- of cheating on her. The boisterous dispute escalated to the point where Appellant threw a chair at Mrs. Frazier. Mrs. Frazier's mother, Kimberly Yancy, who lives at the same residence with Appellant and Mrs. Frazier, went outside to summon neighbors to check on her daughter. (See N.T. 02/26/14, pp. 5-11; 168-169, 173).

Mrs. Yancy approached Sharee Thomas, who was sitting on her porch with her aunt, Yolanda Williams, and asked Mrs. Thomas if she would come over to make sure Mrs. Frazier was okay. Mrs. Thomas obliged, and her aunt, Mrs. Williams, accompanied her to make sure Mrs. Thomas was safe. Once inside the residence, Appellant descended the second-floor stairway, yelling in a loud and aggressive tone, "[W]ho's in my damn house, everybody mind their damn business" and "Get the f' out of my house." He then proceeded straight to the kitchen, where he reached above the refrigerator and retrieved a black handgun, which Mrs. Williams described as a "MAC-10". Appellant immediately began "pointing [the handgun] at

---

[7] Appellant's wife's official name is Kimberly Nicole Frazier, but she goes by "Nikki". (See N.T. 02/26/14, pp. 149, 168-169).

2

everybody", including Mrs. Williams, Mrs. Thomas, and his mother-in-law, Mrs. Yancy, prompting them to flee the residence and seek refuge in the house next door. (See N.T. 02/26/14, pp. 11-25).

Appellant did not stop there, however. He exited the residence and, waving the gun back and forth at a crowd of neighbors who had assembled, Appellant repeatedly yelled, "[A]nybody have anything to say?" Everyone started running back inside their houses, and Appellant continued walking down the block, MAC-10 in hand. Mrs. Williams, who observed these events from Appellant's next-door neighbor's house, testified that Appellant walked down the block and re-approached without the handgun a few minutes later, when police arrived at the scene. (See N.T. 02/26/14, pp. 25-30).

Philadelphia Police Officer Ross Scott and his partner, Officer Clement, arrived on the 2400 block of Douglas Street in response to police broadcasts of "black male with a gray sweatshirt, blue sweat pants, on the highway with a MAC-10". There, they encountered Appellant, who glanced at Officer Scott, but continued walking away at a fast pace. The officers slowly and cautiously pursued him in their cruiser until approximately mid-block, when they ordered him to put his hands against the wall. Appellant initially complied with their directive, but when Officer Ross went to pat him down for weapons, Appellant took his hand off the wall and began walking away. Officer Scott grabbed him by the wrist, but Appellant snapped his arm away and took a "defensive stance"; he then "squared up" against Officer Scott and threw a punch at the officer's head. Fortunately, Officer Scott was able to duck Appellant's punch, at which time his partner tackled Appellant. The two officers then handcuffed Appellant, who then spit in Officer Clement's face. They attempted to place him in their patrol car, but he was

3

kicking and "fighting the whole way". Prior to placing him in the vehicle, Appellant tried to kiss Officer Clement, and said, "I'm going to make you my bitch." (See N.T. 02/26/14, pp. 59-72).

Based on information gathered at the scene, police searched the lot at the end of the block, where, inside a trashcan chained to playground equipment, they recovered a black MAC-10, loaded with 18 live rounds, including one in the chamber. The gun was secured under property receipt, test fired at the ballistics lab, and found to be operable. (See N.T. 02/26/14, pp. 97-108, 115-128).

In his defense, Appellant presented the testimony of his wife, Mrs. Frazier, who conceded all the above evidence with the exception of the gun. Specifically, she confirmed that she and Appellant got into a boisterous altercation over his alleged cheating, Appellant threw a chair at her, he became incensed that neighbors were present and not minding their own business, and that he was yelling and cursing and told them to "Get the f' out of [his] house" -- but did not retrieve or point a gun at anyone. Mrs. Frazier also claimed that Mrs. Williams -- who was the only cooperating Commonwealth eyewitness -- conjured up the whole "MAC-10" bit (even though, lo and behold, *police recovered the MAC-10* in the nearby lot). Mrs. Frazier further claimed that Mrs. Williams' motive for "making it up" was so that she could extract money from the Fraziers, to wit, she claimed that Mrs. Williams called her up and demanded money in exchange for not testifying in court. (See N.T. 02/26/14, pp. 149-215; N.T. 02/27/14, pp. 4-15).

Significantly, however, Defendant also maintained that Mrs. Williams' testimony was biased because, at the time of her police statement, she had a pending federal drug case, and wished to curry favor with prosecutors. (See N.T. 02/26/14, pp. 45-50). Perhaps sensing the diametric opposition of Defendant's two theories -- *i.e.*, that Mrs. Williams was simultaneously motivated to stay both in *and* out of this case -- and/or perhaps embracing Mrs. Williams' non-

4

wavering and detailed testimony coupled with the corroborating physical evidence -- the jury found Appellant guilty of the above offenses. On April 21, 2014, following a pre-sentence investigation, this Court imposed sentence as previously set forth.

DISCUSSION

Appellant raises the following issues on appeal:

1. Whether "[t]his Court erred by denying [Appellant's] request for a mistrial after the prosecutor twice claimed in her opening statement that [Appellant] 'runs his neighborhood'"?

2. Whether "[t]his Court erred by precluding Defense Counsel from questioning Yolanda Williams about the specific criminal consequences she was facing at the time she made her statement to the police in this case"?

3. Whether "[t]his Court erred when it refused to give a limiting instruction regarding the radio call and flash information that Officer Scott testified to"?

4. Whether "[t]his Court erred by overruling Defense Counsel's objections at N.T. 2/26/14, 101, 102[,] where the objectionable testimony was inadmissible hearsay and no limiting instruction regarding same was given"?

This Court will address Appellant's claims in the order presented above.

**1.     Prosecutor's Opening Statement.**

Appellant claims that this Court erred by denying his request for a mistrial after the prosecutor twice claimed in her opening statement that Appellant "runs his neighborhood." This claim is meritless.

The decision whether to grant a new trial because of prosecutorial misconduct is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Commonwealth v. Rios, 721 A.2d 1049, 1054 (Pa. 1998). In reviewing allegations of

5

prosecutorial misconduct, a court must evaluate whether the defendant received a fair trial, not a perfect one. Commonwealth v. Washington, 700 A.2d 400, 407 (Pa. 1997).

A prosecutor must be free to present his or her arguments with logical force and vigor. Commonwealth v. Bridges, 757 A.2d 859, 876 (Pa. 2000). "Not every unwise, intemperate, or improper remark made by a prosecutor mandates the grant of a new trial." Commonwealth v. Spotz, 47 A.3d 63, 98 (Pa. 2012). "A prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments." Id. at 97. "Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks." Id.

"Thus, a prosecutor's remarks do not constitute reversible error unless their 'unavoidable effect . . . [was] to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.'" Commonwealth v. Smith, 985 A.2d 886, 907 (Pa. 2009) (quoting Commonwealth v. Washington, 700 A.2d 400, 407-408 (Pa. 1997)). Further, the allegedly improper remarks must be viewed in their entire context. See Commonwealth v. Smith, 985 A.2d at 907.

Here, Appellant claims that he is entitled to a new trial because the prosecutor stated, "No one gets in Carnell Frazier's business. He runs his home. He runs his neighborhood." (See N.T. 02/25/14, pp. 37, 47). Putting aside the fact that there was no suggestion whatsoever that Appellant was involved in the drug trade or other illicit behavior (other than that at bar) -- the prosecutor's comments were entirely fair given the evidence in this case. Indeed, Appellant was *explicit* in this regard. The evidence supported the argument that Appellant not only repeatedly cursed and yelled at his neighbors to stay out of his business, but he terrorized them by pointing and waving a MAC-10 at them both inside and outside his house. In fact, the evidence showed that Appellant's actions were so menacing that he caused an entire crowd of neighbors to run

6

inside their homes out of fear. Thus, the prosecutor's remarks were fairly based on the evidence. As such, Appellant's claim is meritless.

### 2. Cross-Examination of Mrs. Williams Regarding Her Pending Criminal Matter at the Time of Her Statement.

Appellant claims that this Court erred by not permitting him to question Yolanda Williams about the specific criminal consequences she was facing at the time of her statement to police (citing N.T. 02/26/15, pp. 48-49). This claim is without merit.

It bears underscoring that this Court did *not* preclude cross-examination of Mrs. Williams' pending criminal matter, but rather limited it to establishing that at the time of her statement, she had an open drug case for which she was on probation at the time of trial -- all of which was agreed-to beforehand by counsel:

> [BY MR. LINK (DEFENSE COUNSEL)]:
>
>     Q.    And you know neither Nicky or Kim have ever said he had a gun?
>
>     MS. MOORE: Objection.
>
>     THE COURT: Overruled.
>
>     THE WITNESS: Kim did tell the police she had a gun.
>
> BY MR. LINK:
>
>     Q.    Oh she did?
>
>     A.    Kim did.
>
>     THE COURT: Did you say Nicky did or Kim did?
>
>     THE WITNESS: Kim, the mother.

BY MR. LINK:

Q.     And you were just going to assist, it was purely out of helping the family out; is that your testimony?

A.     I was there when it happened, but I didn't want to get involved with it afterwards.

Q.     You weren't there when she said anything to the police?

A.     She told the police when I got in the house, she said these were the ladies in there when he pulled the gun out.

Q.     And you testified you had this open case at the time, correct?

A.     Yes, with the federal government.

Q.     A bigger case, not one handled here in the Philadelphia County court?

MS. MOORE:  Objection.

THE COURT:  Sustained.

BY MR. LINK:
Q.     At the point of this incident no deals had been worked out in your favor, correct?

A.     Not at all.

Q.     And were you told how many possible years you were looking at if your case had gone to trial, the federal case?

MS. MOORE:  Objection.

THE COURT:  Sustained.

BY MR. LINK:

Q.     Had you been down to the United States Attorney's Office for what's called a proffer at this point?

MS. MOORE:  Objection.

8

THE COURT: Sidebar.

- - -

(The following discussion was held at sidebar between the Court and counsel:)

- - -

THE COURT: Ms. Moore?

MS. MOORE: I thought we talked about how this would be limited yesterday and I don't believe it's relevant what her proffer would be on her federal case.

THE COURT: I did and you [Mr. Link] did agree that your cross-examination would be limited to the fact that she had an open drug case and that she was now on probation. We specifically agreed that that's what you would limit your cross-examination to.

MR. LINK: I was going to get into the facts of the case.

THE COURT: Not getting in the facts of a proffer.

MR. LINK: Your Honor, my objection is under "Commonwealth v. Mitchell" everything in her state of mind is relevant. If she knows she's looking at a huge amount of state time, federal time.

THE COURT: You are permitted to ask whether or not any deal was discussed, you're not permitted to go into details and we agreed on this yesterday. I find that there's a connection here that can establish bias on the part of this witness and understand those circumstances and you agreed yesterday that the extent of the cross-examination would be that she, in fact, had an open case at the time and that she is now on probation. So no, you're not getting into the details of the proffer.

MR. LINK: Can I get into the fact of what she was expecting to face had the case gone to trial?

THE COURT: No.

9

- - -

(Following occurred in open court:)

BY MR. LINK:

Q.      At the time of this you had -- it wasn't for possession, it was for distributing drugs, correct?

A.      Correct.

Q.      And at this point nothing was working out in your favor, correct?

A.      No.

Q.      You were trying to work something out with your lawyer, correct?

A.      No.

MS. MOORE:  Objection.

THE COURT:  Overruled.

MR. LINK:  Can I revisit the question regarding the proffer?

THE COURT:  No, you may not.

BY MR. LINK:

Q.      At some point you did things for the federal government to turn things into something favorable for you?

MS. MOORE:  Objection.

THE COURT:  Sustained.

BY MR. LINK:

Q.      Are you happy with the sentence you got of probation and house arrest?

MS. MOORE: Objection.

THE COURT: Overruled.

THE WITNESS: Yes.

(N.T. 02/26/14, pp. 45-50).

As the foregoing demonstrates, this Court permitted counsel to establish that: (a) Mrs. Williams had an open case at the time of the incident; (b) the factual nature of her open case -- drug distribution -- which obviously poses a hefty penalty; (c) she had not worked out any deals with federal prosecutors prior to her statement in this case; and (d) after which she received a relatively lenient sentence of probation and house arrest (no jail time). Accord Commonwealth v. Evans, 512 A.2d 626, 632 (Pa. 1986) (defendant "must have the opportunity at least to raise a doubt in the mind of the jury as to whether the prosecution witness is biased"). Thus, Appellant clearly was permitted to raise a doubt in the mind of the jury as to whether Mrs. Williams was biased.[8]

In that regard, it was within the exclusive province of the jury to accord weight, including none at all, to Mrs. Williams' testimony. See Commonwealth v. Widmer, 744 A.2d 745, 751

---

[8] Moreover, this Court specifically instructed the jury as follows:

Let's talk about Yolanda Williams. You heard evidence that Ms. Williams had an open federal drug charge at the time she gave a statement to police regarding Mr. Frazier having a gun and being involved in this incident. You are to consider her open drug charge, the evidence of that for the possible bias that Ms. Williams may have toward prosecution in giv[ing] that statement. You may, if you choose, find the evidence of bias, however, to be unrelated to this case and you may choose to disregard that evidence completely.

(N.T. 02/27/14, p. 77).

11

(Pa. 2000). That the jury elected to embrace Mrs. Williams' testimony *despite being apprised of her potential bias*, simply provides no basis for relief.

**3. Police Radio Calls and Flash Information.**

Appellant next contends that this Court erred by not giving a limiting instruction regarding the radio call and flash information to which Officer Scott testified. This claim fails.

"Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion." Commonwealth v. Montalvo, 986 A.2d 84, 94 (Pa. 2009) (citation omitted). "Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." Id. at 95.

"'It is well established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted.'" Commonwealth v. Trinidad, 96 A.3d 1031, 1037 (Pa. Super. 2014) (citations omitted).

Here, Appellant concedes that Officer Scott's testimony was admitted to show police course of conduct (*i.e.*, what drew him to the 2400 block of Douglas Street), and *not* for the truth of the matter asserted (*i.e.*, that there was a male holding a gun). Nonetheless, he claims that he was unduly prejudiced by this testimony.

Appellant misapprehends the testimony, however, as Officer Scott never testified that he saw *Appellant* with a gun. The relevant portion of Officer Scott's testimony is as follows:

12

[BY MS. MOORE:]

Q.    So on that specific day did you receive a radio call about that time [5:17 p.m.]?

A.    Yes.

Q.    And was there a radio call for the area of 2400 Douglas Street?

A.    2400 Douglas and a few seconds later, 2500 Douglas.

Q.    Can you tell me what the radio call [was] for?

MR. LINK:  Objection.

THE COURT:  Overruled.

THE WITNESS:  It was a radio call for a black male with a gray sweatshirt, blue sweat pants, on the highway with a MAC-10.

BY MS. MOORE:

Q.    And how far away were you from the area?

MR. LINK:  I am going to renew my objection and ask for a limited instruction.

THE COURT:  Overruled.

BY MS. MOORE:

Q.    How far were you from the area after you get that call?

A.    Block-and-a-half.

(N.T. 02/26/14, pp. 61-63).

Following Officer Scott's testimony, a recess was taken during which the following discussion occurred outside the jury's presence:

13

THE COURT: What could be your problem with that?

MR. LINK: She just introduced all the testimony regarding the nature of the radio call and the nature of the flash.

THE COURT: Which is completely proper in any police investigation. I can't imagine where you're coming from, you don't think an officer can testify as to what flash information was, which was why he was called on the block. I mean, if that's the case then why don't we just change the rules of [evidence] just to fit this case alone.

MR. LINK: It's never admissible to show when it's offered for the truth of the matter.

THE COURT: It's always admissible to show why the officer responded and why he zeroed in on this defendant.

MR. LINK: I agree 100 percent, which is why I asked for a limiting instruction.

THE COURT: There's no limiting instruction I need to give for why a police officer is doing his job.

(N.T. 02/26/14, pp. 82-85). Thus, a limiting instruction was not required in this case as the out-of-court statement neither was offered for the truth of the matter asserted, nor did it place the gun in *Appellant's* hands. Cf. Commonwealth v. Trinidad, supra (trial court did not err by allowing detective to testify about a recorded statement he took from out-of-court declarant, which **specifically described the *defendant's* involvement in the shooting**). A fortiori, therefore, Appellant is due no relief.

4. **Sergeant Caputo's Course of Conduct Testimony**

Finally, Appellant contends that this Court erred by overruling counsel's objection to Sergeant Gregory Caputo's testimony concerning information he gathered at the scene that led

14

him to the discovery of the handgun (citing N.T. 02/26/14, pp. 101-102). This claim is unavailing.

Sargeant Caputo testified that when he arrived on the block of 2400 Douglas St, he observed a trash-strewn empty lot. He was approached by two females who told him that the "male your officers stopped down there threw a gun in the lot by the alleyway right there." Sargeant Caputo testified that the women refused to identify themselves and "kept walking". He then directed officers to the location they described, where the officers recovered a firearm from a trashcan. N.T. 02/26/14, pp. 101 - 105.

As discussed in the previous section, "..[c]ertain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted.'" Commonwealth v. Trinidad, 96 A.3d 1031, 1037 (Pa. Super. 2014) (citations omitted). Sargeant Caputo's recitation concerning the tip from the two unidentified women was not offered for the truth of whether, in fact, Appellant possessed a firearm, but instead for the legitimate purpose of explaining the course of the investigation that immediately preceded the recovery of the firearm. As previously discussed, the jury had already heard testimony from Ms. Williams who placed the gun in his hands. Any possible prejudice accrued to the Appellant from Sargeant Caputo's testimony is far outweighed by the weight of the evidence that supported the jury's verdict.

In addition, in order to preserve a claim of trial court error, counsel must lodge a contemporaneous objection and request a remedy such as a mistrial or cautionary instruction. See, e.g., Commonwealth v. Johnson, 42 A.3d 1017, 1026 fn.5 (Pa. 2012) (claim that trial court erred by failing to provide a cautionary instruction waived by failure to *request* a curative instruction) (citing Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised

15

for the first time on appeal.")); see also Commonwealth v. Sanchez, 82 A.3d 943, 970-971 (Pa. 2013) (trial court error claim waived where counsel did not ask for a curative instruction or move for a mistrial); Commonwealth v. Sandusky, 77 A.3d 663, 670-671 (Pa. Super. 2013) (failure to move for a mistrial or request a curative instruction results in waiver of claim despite objection by counsel; "'[E]ven where a defendant objects to specific conduct, the failure to request a remedy such as a mistrial or curative instruction is sufficient to constitute waiver'") (citing Commonwealth v. Manley, 985 A.2d 256, 267 n. 8 (Pa. Super. 2009); Commonwealth v. Jones, 501 Pa. 162, 166, 460 A.2d 739, 741 (1983) (finding prosecutorial misconduct claim waived where defense counsel immediately objected to the prosecutor's conduct but failed to request mistrial or curative instructions)). Cf. Commonwealth v. Rhone, 619 A.2d 1080, 1083 (Pa. Super. 1993) (declining to find waiver where counsel failed to request a curative instruction, but lodged an objection, moved to strike the comment, and requested a mistrial).

Here, while counsel lodged an objection to the alleged hearsay testimony, he did not move for a mistrial or request a cautionary instruction. (See N.T. 02/26/14, pp. 101-102). As such, Appellant's claim is waived. Commonwealth v. Manley, supra; Commonwealth v. Sandusky, supra; Commonwealth v. Sanchez, supra; Commonwealth v. Johnson, supra; Commonwealth v. Jones; supra. Indeed, common sense dictates that a trial court cannot be faulted for failing to provide relief that it was never requested to provide. Accordingly, Appellant's claim is unavailing.

CONCLUSION

For the reasons set forth in the foregoing Opinion, this Court's judgment of conviction and sentence should be affirmed.

16

DATE: 1/7/15

BY THE COURT:

SUSAN I. SCHULMAN, J.

17